UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER PAYNE,

        Plaintiff,

v.

UNKNOWN MAY and
UNKNOWN MORRISON,

        Defendants.
_____/

Case No. 1:23-cv-441

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Xavier Payne, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff sued Corrections Officer (CO) Bryan May and CO Layne Morrison. This matter is now before the Court on defendants' motion for summary judgment (ECF No. 42).

    **I.**    **Plaintiff's allegations**

Plaintiff set forth the following allegations (in his words):

On December 12, 2022 officers' Morrison and May were employed by the Michigan Department of Corrections (MDOC) working at Bellamy Creek Correctional Facility (IBC)  On December 12, 2022 ofc. Morrison and May were assigned and working 5-block within IBC. At approximately 3:35 P.M – 3:40 P.M I urgently informed ofc. Morrison and May, who were standing outside the officer bubble, that I was experiencing an asthma attack, I had used my rescue inhaler but it wasn't working I was audibly wheezing, coughing and gasping for air.  I informed both officers that I needed a breathing treatment immediately.  Both ofc. Morrison and May simply shrugged, looked at each other, looked at their watch and nonchalantly said "we're not calling anybody right now it's count time you're gonna have to wait untill after."  They then instructed me to go wait in the dayroom. I sat in the dayroom gasping for air for nearly 30 minutes while ofc. Morrison and

1

>May did nothing. I didn't end up recieving competent medical treatment/attention and recieving a breathing treatment untill approximately 4:15 P.M.

Compl. (ECF No. 1, PageID.4). For his relief, plaintiff stated:

>I request compensatory damages of $100,000.00 and punitive damages of $150,000.00 for the unnecessary prolonged pain and suffering of an urgent/emergent asthma attack. I have a 8th amendment right not to have my serious medical need met with Deliberate Indifference.

*Id*. at PageID.5.

### II.     Motion for summary judgment

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

>The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.   Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived her of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, the gist of plaintiff's claim is that defendants CO May and CO Morrison violated his Eighth Amendment rights because defendants delayed his access to breathing treatment when he had an asthma attack. Defendants seek summary judgment on the merits of his claim and on the basis of qualified immunity.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

In this case, the defendants are corrections officers, not medical providers. In determining whether defendants were deliberately indifferent to plaintiff's serious medical needs, the Court views each defendant's actions as those of a layperson, not as the actions of a doctor or a nurse. "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented." *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005) (internal quotation marks, citations and brackets omitted). "As *Farmer* makes clear, the

4

officers must not only be aware of the facts from which they could draw the inference that [a prisoner] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.

Here, the question is whether defendants acted appropriately in addressing plaintiff's medical condition. "[T]he symptoms associated with an asthma attack — wheezing, difficulty breathing, tightness in the chest — are quite obvious and recognizable even to a lay person." *Harrison v. Ash*, 539 F.3d 510, 518-19 (6th Cir. 2008). Plaintiff alleged that defendants failed to take any action to treat his asthma attack for 30 minutes. For the reasons stated below, the Court concludes that plaintiff has failed to establish the objective component of his claim, *i.e.*, that during the time before plaintiff was brought to health care, it was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention". *See id.* at 518.

Defendants point out that the relevant MDOC Policy Directive (PD) 03.04.100 (eff. 09/05/2022) defines three types conditions, emergent, urgent, and routine. An "emergent" condition is "[a] condition that a delay in treatment may result in death or permanent impairment". PD 03.04.100 ¶ A.1-2 (ECF No. 43-2, PageID.238). An "urgent" condition is:

> A condition that is not likely to cause death or irreparable harm if not treated immediately. However, the condition needs to be treated as soon as possible.

*Id*. Finally, a "routine" condition is:

> A condition that requires non-urgent, non-emergent health care contact with a prisoner, including screening, chronic disease follow-up, and requests for elective treatment and surgeries.

*Id*.

With respect to urgent and emergent conditions, the policy directive states that:

> Any prisoner who believes they have an urgent/emergent health condition may request health care services by notifying staff of the problem that they believe requires an immediate health care visit. The staff person shall contact health care

>services and convey the prisoner's request, regardless of the prisoner's custody status or the time or day of the request. . .

PD 03.04.100 ¶ XX (PageID.246).

Plaintiff's medical records state that on December 12, 2022 at 4:05 p.m., plaintiff had "Urgent/Emergent" encounter (as opposed to a "Routine" encounter) with RN McIntyre. Medical Record (ECF No. 1-1, PageID.10). Plaintiff complained of breathing problems, with an onset of less than 30 minutes, with exacerbating factors of "mild, intermittent asthma". *Id*. The RN noted that plaintiff had a cough (dry), "Hx of Asthma", and wheezing. *Id*. The RN's assessment was as follows:

>Impaired gas exchange
>Vital signs are unremarkable. Lung sounds diminished in bases, mild inspiratory wheezing noted. Prisoner reports using rescue inhaler "but it didn't work."

PageID.11. Plaintiff was ordered albuterol inhaler starting at that time. *See* PageID.12. The encounter ended at 4:43 p.m. *Id*.

The next day, plaintiff filed a grievance, IBC-22-12-2186-17I ("2186"), which alleged similar facts as the complaint: plaintiff informed defendants around 3:40 p.m. that he needed breathing treatment, they told him it would have to wait until after count, he did not receive "treatment/medical assistance" until 4:10-4:15 p.m. resulting in "a delay of 30-35 min", and that per the "PD/OP" medical emergency staff are to respond no later "than 4 min after being notified of the medical emergency." Grievance 2186 (ECF No. 43-3, PageID.252). In the grievance, plaintiff requested "satisfying monetary compensation (at my discretion) [sic]" and an "immediate waiver to Level 2 where my severe asthma can be properly managed." *Id*.

The summary of the grievance investigation stated as follows:

>Officer May contacted Health Care, spoke with RN McIntyre, and informed him of the situation. Officer Morrison placed Prisoner Payne in the A wing day room

> awaiting health cares response. Officer May stated that RN McIntyre called the Housing Unit back and asked the officers to escort Prisoner Payne to Health Care.
>
> RN McIntyre stated that he did see Prisoner Payne in the clinic for breathing issues. RN McIntyre states further that Prisoner Payne was not in any respiratory distress and did not deem this visit a medical emergency. Prisoner Payne received the breathing treatment with positive results.

Step I Response (ECF No. 43-3, PageID.253). Based on the grievance response: defendants were engaged with health care while plaintiff was waiting in the day room; defendants escorted plaintiff to health care as directed; and, RN McIntyre determined that plaintiff was not in any respiratory distress and did not consider his condition to be a medical emergency.[1]

Based on this record, plaintiff has not established the objective component of his claim, *i.e.*, that he suffered from a medical emergency that was apparent to a lay person. Plaintiff reported his problem to defendants around 3:35-3:40 p.m., and alleged that he "sat in the dayroom gasping for air for nearly 30 minutes while ofc. Morrison and May did nothing" PageID.4. Contrary to plaintiff's claim, defendants acted on plaintiff's situation while he waited in the dayroom by contacting health care and escorting him for evaluation by RN McIntyre. While plaintiff alleged that he was "audibly wheezing, coughing and gasping for air" commencing around 3:35 p.m. to 3:40 p.m., he was not exhibiting these serious symptoms when he arrived at health

---

[1] The Sixth Circuit has considered grievance responses as evidence in evaluating motions for summary judgment. *See, e.g., Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669 at *2 fn. 1 (Order) (6th Cir. July 31, 2023):

> The district court admonished [plaintiff] Calhoun—but not [defendant] Morris—for relying on the grievance responses, on the ground that they and the statements therein "are hearsay." However, the grievance responses and Morris's statements contained in the responses are likely admissible either under the business-records exception to the rule against hearsay, *see* Fed. R. Evid. 803(6), or as an admission by a party opponent, *see* Fed. R. Evid. 801(d). Moreover, we may—and do—consider the grievance responses in reviewing the district court's summary-judgment decision, even if they might not be admissible at trial, because Morris did not object to Calhoun's reliance on them; indeed, as noted above, she herself relied on them. *Cf.* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Here, plaintiff did not object to the substance of the grievance investigation cited by defendants. *See* Defendants' Brief (ECF No. 43, PageID.228-230).

care at 4:05 p.m. During the examination, RN McIntyre did not note such serious symptoms. Rather, RN McIntyre observed: that plaintiff's vital signs were unremarkable; that he had only "mild inspiratory wheezing"; that he was alert and oriented to time, place, and person; and, that he did not "Appear[] in Distress". PageID.11. RN McIntyre later stated that he did not deem the situation to be a medical emergency. Under these circumstances, it would not have been "so obvious that even a lay person would easily recognize the necessity for a doctor's attention" during the time that plaintiff waited to see RN McIntyre. *See Harrison*, 539 F.3d at 518. For all of these reasons, plaintiff has failed to show the objective prong of his Eighth Amendment claim and defendants are entitled to summary judgment on his claim.

### C.    Qualified Immunity

Defendants also seek summary judgment under the affirmative defense of qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one

is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor." *Id*. "When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). As discussed, plaintiff cannot establish that defendants violated his Eighth Amendment rights. Accordingly, defendants should be granted summary judgment on this basis as well.

### III.  Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 42) be **GRANTED** and that this lawsuit be **terminated**.

Dated: August 11, 2025                                          /s/ Ray Kent
                                                                RAY KENT
                                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).